UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


JAMES DEWARREN GILLEY,

     Plaintiff,

v.                                     Case No. 3:20cv1006-MCR-HTC

CAPTAIN CORY SETTLEMIRES,
et al.,

     Defendants.

_____/

## REPORT AND RECOMMENDATION

     This matter is before the Court on Defendant Settlemires' motion for summary judgment, ECF Doc. 44, to which Plaintiff responded, ECF Doc. 52, as well as Plaintiff's motion for leave to file a second amended complaint naming Sgt. M.C. Randall, Lt. Theodore Mursch, Sergeant Roller, Officer David Derouin, Officer Randy Chambers, and Lt. Denise Behr in place of the "Extraction Team Members"[1] (ECF Docs. 41, 42). The matter was referred to the undersigned Magistrate Judge

---

[1] At the time Plaintiff filed his initial and first amended complaint, he was unable to identify the Extraction Team Members by name. Thus, although the Court determined the amended complaint was sufficient to be served, the Court could not serve the Extraction Team Members, and instead directed Plaintiff to engage in discovery to identify the Members and diligently move to amend his complaint thereafter.

for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(C).

Upon review and careful consideration, the undersigned recommends the motion be GRANTED and summary judgment be entered in favor of Defendant Settlemires. Additionally, because the undersigned finds the Extraction Team Members would also be entitled to judgment on the same grounds as discussed herein, the undersigned finds Plaintiff's requested amendment to be futile. Thus, the Court also recommends the motion for leave to amend be DENIED.

## I.    BACKGROUND

Plaintiff James Dewarren Gilley, an inmate currently housed at Taylor Correctional Institution, filed an amended complaint under 42 U.S.C. § 1983, alleging that the Extraction Team Members, under the direction of Captain Settlemires, used excessive force in violation of the Eighth Amendment during a cell extraction on September 27, 2019, when Plaintiff was an inmate at Okaloosa Correctional Institution ("Okaloosa CI"). ECF Doc. 15. As set forth below, however, the undersigned finds that Plaintiff's allegations of excessive force are blatantly contradicted by the undisputed video and medical evidence.

## II.    SUMMARY JUDGMENT STANDARD

To prevail on a motion for summary judgment, Defendant must show Plaintiff has no evidence to support his case or present affirmative evidence that Plaintiff will

be unable to prove his case at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986). If Defendant successfully negates an essential element of Plaintiff's case, the burden shifts to Plaintiff to come forward with evidentiary material demonstrating a genuine issue of fact for trial. *Id.* The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 248 (1986) (emphases omitted). An issue of fact is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. *See id.*; *accord Tipton v. Bergrohr GMBH–Siegen,* 965 F.2d 994, 998 (11th Cir. 1992).

Additionally, the Court must view all the evidence, and all factual inferences reasonably drawn from the evidence, "in the light most favorable to the non-moving party." *Hairston v. Gainesville Sun Publ'g Co.,* 9 F.3d 913, 918 (11th Cir. 1993). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B & B Cash Grocery Store, Inc.,* 975 F.2d 1518, 1534 (11th Cir.1992) (citing *Mercantile Bank & Trust Co. v. Fidelity and Deposit Co.,* 750 F.2d 838, 841 (11th Cir. 1985)).

The Court is not obliged, however, to deny summary judgment for the moving party when the evidence favoring the nonmoving party is "merely colorable or is not

significantly probative." *Anderson,* 477 U.S. at 249–50 (citations omitted). "A mere 'scintilla' of evidence supporting the [nonmoving] party's position will not suffice" to demonstrate a material issue of genuine fact that precludes summary judgment. *Walker v. Darby,* 911 F.2d 1573, 1577 (11th Cir.1990) (quoting *Anderson,* 477 U.S. at 242). "[C]onclusory allegations without specific supporting facts have no probative value," and are legally insufficient to defeat summary judgment. *Leigh v. Warner Bros., Inc.,* 212 F.3d 1210, 1217 (11th Cir. 2000). Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial'" and a court should grant summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III.    SUMMARY JUDGMENT EVIDENCE

In support of the motion, Captain Settlemires relies on the following evidence: Settlemires' sworn declaration, ECF Doc. 44-1; the use-of-force authorization from Warden Booker, ECF Doc. 44-2; the sworn use-of-force reports from the extraction team members, ECF Docs. 44-3 to 44-9; the computerized MINS Incident Report, ECF Doc. 44-10; the sworn Report of Force Used report authored by Sgt. Randall and agreed to by officers Mursch, Roller, Derouin and Chambers. ECF Doc. 44-11; and the Emergency Room Record from Plaintiff's September 27, 2019 post-use-of-

force examination, ECF Doc. 44-2. Plaintiff does not dispute the authenticity or veracity of the use of force reports or medical records.

In opposition to the motion Plaintiff relies on the sworn allegations in his amended complaint (ECF Doc. 15) and those included as part of his written opposition (ECF Doc. 52).[2] Additionally, both parties also rely upon fixed-wing and hand-held videos of the incident, which Defendant produced under seal and provided to the Plaintiff for review.

In a case where video evidence exists, a court is not required to accept plaintiff's sworn statements as true if video evidence "blatantly contradict[s]" plaintiff's version of events. *See Jones v. City of Cincinnati*, 736 F.3d 688, 692 (6th Cir. 2012) (quoting *Scott v. Harris,* 550 U.S. 372, 380–82 (2007)). Thus, the Court must "view[] the facts in the light depicted by the videotape" and cannot adopt the version of the facts offered by the Plaintiff. *See Jones*, 736 F.3d at 692; *Scott,* 550 U.S. at 380 ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."); *Oliver v. Warden*, 761 F. App'x 960, 965 (11th Cir. 2019) ("In cases involving video evidence, we will accept the video's depiction instead of

---

[2] Any "specific facts" pled in a pro se plaintiff's sworn complaint must be considered in opposition to summary judgment. *See Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014) (citing *Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986)).

the prisoner's account to the extent the video contradicts obviously the prisoner's version of events.") (citing *Pourmoghani-Esfahani v. Gee*, 625 F.3d 1313, 1315 (11th Cir. 2010)).

## IV.    DISCUSSION

To establish a claim of excessive force, an inmate must present evidence to show that the force was applied "maliciously and sadistically for the very purpose of causing harm" rather than "in a good faith effort to maintain or restore discipline." *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986).   Courts evaluating claims of excessive force consider five factors "relevant to ascertaining whether force was used 'maliciously and sadistically for the very purpose of causing harm.'" *Campbell v. Sikes,* 169 F.3d 1353, 1375 (11th Cir.1999) (quoting *Whitley,* 475 U.S. at 321). These five factors are:

> (1) the extent of the injury;
> (2) the need for application of force;
> (3) the relationship between that need and the amount of force used;
> (4) any efforts made to temper the severity of a forceful response; and
> (5) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them.

*Id.*

Additionally, the use of force against an inmate while trying to secure the inmate or prevent harm to others "does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or

applied for security purposes was unreasonable, and hence unnecessary in the strict sense." *Id*. at 1372. Prison officers are given a wide range of deference when acting to preserve discipline and security, and "guards may use force when necessary to restore order and need not wait until disturbances reach dangerous proportions before responding." *Cockrell v. Sparks,* 510 F.3d 1307, 1311 (11th Cir.2007).

In the amended complaint, Plaintiff alleges three instances of excessive force: (1) the use of the extraction team to forcibly extract him was excessive because he was willing to comply with hand restraints and not posing a threat; (2) during the restraining of Plaintiff, and despite him not resisting, an extraction team member took "his left hand behind [his] back and pull[ed] it up [his] back behind [his] head then began to bend fingers and ultimately breaking [his] hand"; and (3) during the walk to the decontamination shower, one officer was choking him while the other "dug at the space between [his] ribs." ECF Doc. 15 at 6. Each of these instances are discussed separately below.

### A.    The Use of the Extraction Team

Plaintiff admits that upon arriving at Okaloosa CI on September 25, 2019, Plaintiff attempted suicide and was immediately placed in a "psych observation cell." ECF Doc. 15 at 5. Plaintiff also admits that two days later, on September 27, 2019, the day of the cell extraction at issue, he had "a mental episode," resulting in Plaintiff "smearing feces on [him]self and the cell walls." *Id.* According to Plaintiff,

he was then "severely attacked by the Extraction Team [led] by Captain Settlemires" even though "cameras will show [he] never posed a threat" and he was "in full compliance, hands behind [his] back, and on [his] knees" when the Extract Team "used excessive, unnecessary force." *Id.* at 7. Plaintiff also urges the Court to "[p]lease see camera." *Id.*

The Court has reviewed the camera recordings and the footage does not show Plaintiff was "in full compliance," or that the use of force was excessive. As discussed below, while it is true the fixed wing video shows Plaintiff walking up to the cell door with his hands behind his back just before the Extraction Team enters the cell, none of this could be observed by Captain Settlemires or the Extraction Team because the only window into the cell was covered with feces. Thus, it was unknown to those officers whether Plaintiff may have had a weapon or had plans to attack the officers upon entry. At no time did Plaintiff make any efforts to advise officers of his intent to comply, such as voicing that intent to comply or cleaning the window and holding up his hands where officers could see them. Indeed, the use of the Extraction Team was the last resort after several undisputed attempts to gain compliance failed.

The handheld video starts at approximately 3:15 PM, before Captain Settlemires sends the extraction team into Plaintiff's cell, and shows the exterior of

Plaintiff's cell door and window in the background.[3]  It is clear from the video the cell window is covered with feces.  At the 00:33-00:50[4] mark of the handheld video, Captain Settlemires states that Plaintiff had been asked to clear the feces off the window and to submit to hand restraints so he could receive a shower and the room could be decontaminated but Plaintiff refused to do either.  *See also,* Declaration, ECF Doc. 44-1.  Plaintiff does not dispute he was given these orders or that he refused to comply with these orders prior to Captain Settlemires being called to the scene.  Indeed, Plaintiff admits in the amended complaint an officer told him to remove the feces.  ECF Doc. 15 at 5.

Captain Settlemires also explains on the video that because Plaintiff is categorized as "Psych 1", a prior intervention by a CIT (crisis intervention team) was attempted but was not successful.  This information is further confirmed by Captain Settlemires in his declaration as well as in the authorization for use of force report completed by the Warden.  ECF Docs. 44-1 at 2, 44-2.  These documents are not disputed by Plaintiff.  Additionally, Captain Settlemires explains in the video that Warden Booker was contacted and authorized a forcible cell extraction to gain compliance with verbal orders.  *See* ECF Doc. 44-2.

---

[3] Captain Settlemires begins by asking the officer holding the handheld camera to identify himself and the date and time, which he does.  This officer, however, incorrectly states the day as September 26.  There is no dispute by the parties that the extraction occurred on September 27.
[4] This time notation refers to the amount of time elapsed from the start of the handheld video being discussed, and not the time of day.

Captain Settlemires then asks the Extraction Team Members to identify themselves, which they do.[5]  Additionally, as each member is identifying himself, the member also relays for the video what his role will be in the extraction process. After the introduction by the Extraction Team Members, Captain Settlemires tells the Extraction Team Members that it is unknown whether Plaintiff may have a weapon and that they should use caution to protect themselves and each other, but they are "warn[ed]" to use only the minimal amount of force necessary to restrain Plaintiff.  *See* HH Video, marker 02:48.

Next, Captain Settlemires gives Plaintiff a final chance to come over to the door, clean off the window, and submit to restraints.  Captain Settlemires gives this order once, starting at marker 03:04, and then gives Plaintiff a "final order" at marker 3:08 to "step over here, uncover this window and submit to restraints or cell extraction team will be utilized."  Captain Settlemires then waits several seconds (until marker 3:25) before opening the door.

Plaintiff does not dispute Captain Settlemires gave him these instructions. Plaintiff states in his response that "Cpt. Cory Settlemires approached my cell door instructing me to take the feces off the window and submit to hand restraints."  ECF

---

[5] The Extraction Team Members are correctly named by the Plaintiff in his proposed second amended complaint.  Defendant Lt. Denise Behr is not an Extraction Team Member and, as correctly stated by Plaintiff, supervised the extraction.  She can be seen in the handheld video standing alongside Captain Settlemires.

Doc. 52 at 4.  Plaintiff alleges, however, that "at no time did Cpt. Settlemires offer me a chance to submit to hand restraints," and that he "attempted to comply with the OIC instructions to submit to hand restraints," by approaching the cell door and putting his hands behind his back, "but the flap never opens." *Id.*

Plaintiff relies upon the fixed-wing video of the inside of the cell to support his allegations.  The fixed wing video of the inside of the cell, which starts at 3:13 PM shows Plaintiff walking back and forth in the cell for a little over 2 minutes.  Then, at 15:15:19,[6] Plaintiff lays on the floor with his hands behind his back.  He lays in that position until 15:15:42, at which time he gets up, walks to the door, and looks through the feces covered window.  At 15:15:56, Plaintiff puts his hands behind his back and backs up to the door.  At 15:16:02, the Extraction Team Members breach the door and push Plaintiff forward into the cell.

Plaintiff argues this footage shows he was willing to comply and did not pose a threat.  The problem with Plaintiff's argument, however, is that the feces, which covered the entire window, prevented Captain Settlemires from seeing inside the cell.  Thus, there was no way for Captain Settlemires to know where Plaintiff was standing or what he was doing with his hands.  Without Plaintiff first removing, or at least attempting to wipe the feces off the window, there was no way for Captain

---

[6] Unlike the notation for the handheld video, the time notation for the fixed wing video shows the time of day in military format, not the amount of time elapsed from the beginning of the video.

Settlemires to be aware of Plaintiff's attempt to comply. The fact that the fixed wing video shows Plaintiff turning with his back to the door and his hands behind his back near the door flap, thus, would have been unknown to Captain Settlemires.

Also, Plaintiff's argument ignores two other important points made clear from the video evidence. First, there is no indication Plaintiff made any verbal offers of compliance. Neither the handheld video nor the fixed wing video show Plaintiff making any attempts to communicate his intentions to comply to Captain Settlemires. No such communication can be heard from the handheld video, and Plaintiff is not seen talking in the fixed wing video. Second, Plaintiff was completely unrestrained in the cell and his movement in the cell changed each minute. Thus, the fact that Plaintiff is seen in the fixed wing camera standing at the door at 3:15 and 56 seconds, does not, given Plaintiff's prior noncompliance, mean that he was no longer a threat to officers (even had they been able to see inside the cell).

Moreover, Plaintiff does not dispute he was given other opportunities to comply *prior* to Captain Settlemires' intervention and failed to do so. Plaintiff also does not dispute, regardless of whether he attempted to submit to hand restraints, that he did not comply with orders to clean the window. As stated above, not only does Plaintiff admit an officer told him to clean the window, but the fixed wing video of the hallway and exterior of the door as well as the handheld video shows the window completely covered with smeared feces from the time the fixed wing video

of the hallway starts at 2:33 PM until the Extraction Team enters the cell, over 40 minutes later.

Plaintiff also alleges the fixed wing video of the hallway of the infirmary will show he "never posed any physical threat" and that an unnamed officer "repeatedly approached the cell door with taunts of racial comments/slurs in an attempt to provoke [him] into aggression. When that didn't work, he told me to take the feces off the window cause if [Plaintiff] make them come in the cell they were gonna brake [Plaintiff] up and send [him] to an outside hospital." ECF Doc. 15 at 5. These allegations, however, are not supported by the video.

Although the fixed wing video shows the hallway and various officers approaching the cell, there is no sound on the video. Regardless, Plaintiff's allegation, even accepted as true, is irrelevant to the summary judgment analysis because the officer who appears to have approached the cell is not one of the defendants or an Extraction Team Member. Even if that officer had threated Plaintiff, as alleged, a verbal threat is not sufficient to rise to the level of an Eighth Amendment claim. *See, e.g.*, *Hernandez v. Fla. Dept. of Corrections*, 281 F. App'x 862, 866 (11th Cir. 2008) ("[Plaintiff's] allegations of verbal abuse and threats by the prison officers did not state a claim because the defendants never carried out

these threats and verbal abuse alone is insufficient to state a constitutional claim.").[7]

Thus, applying the five excessive use of force factors to the conduct as depicted in the video evidence, the undersigned finds it was not excessive force for Captain Settlemires to authorize or lead the Extraction Team into the cell. First, as discussed in the next section, Plaintiff's post-use of force medical examination showed Plaintiff suffered no physical injuries. Although Plaintiff contends his hand was broken, the undisputed medical evidence shows otherwise. Thus, the lack of injury supports a finding that the force used was not excessive. *See Wilkins v. Gaddy,* 595 U.S. 34, 37 (2010) ("The extent of injury may also provide some indication of the amount of force applied. As we stated in *Hudson,* not 'every malevolent touch by a prison guard gives rise to a federal cause of action.'"). "An inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Watson v. Edelen,* 76 F. Supp. 3d 1332, 1366–67 (N.D. Fla. 2015) (*citing, Hudson,* 503 U.S. at 9). In *Smith v. Sec'y, Dep't of Corr., supra,* for example, the Eleventh Circuit held that facial swelling resulting from the use of force was an indication that a not more than *de minimis* force was applied to the plaintiff. *See Smith,* 524 F. App'x at 514 ("even taking Smith's version of the events as true, any use of force was *de minimis* and the

---

[7] Plaintiff also alleges that after he returned to the cell, Extraction Team Members continued to verbally threaten him. Such allegations, however, even if true, do not rise to a constitutional violation. *See, e.g., Hernandez,* 281 F. App'x at 866.

district court did not err in concluding that no genuine issue of material fact existed about whether Officer Daniels used excessive force in violation of the Eighth Amendment").

Second, as discussed above, it was necessary to use the Extraction Team to extract Plaintiff from the cell. Plaintiff admits he had smeared feces on the walls of his cell. Officers needed to remove Plaintiff from the cell so they could decontaminate the cell and also clean Plaintiff. Plaintiff, however, refused to remove the feces from the window to allow officers to see inside the cell. Also, Plaintiff failed to alert officers of any intent to comply with officers' orders.

Third, the undersigned finds, based on the video evidence, that the force applied by the Extraction Team once inside the cell to be commensurate to the need. Until Plaintiff was restrained and covered, he posed a risk to the officers. Moreover, because officers could not see in the cell and given Plaintiff's noncompliant behavior, it was necessary for the Extraction Team, as they stated at the beginning of the video, to use their body weight to restrain Plaintiff and to keep him immobilized until the Team Members could apply both hand and leg restraints on Plaintiff. The video evidence shows that the Team Members were on Plaintiff for a little more than two minutes and only until officers confirmed Plaintiff's legs and hands had been restrained. (The specific instances of excessive force alleged by Plaintiff during this process are discussed separately below).

Fourth, the evidence is uncontradicted that Captain Settlemires made several unanswered efforts to temper the severity of a forceful response, both before and after the Extraction Team was utilized. Also, it is undisputed that the CIT attempted, unsuccessfully, to gain compliance. As discussed above, at a minimum, more than 40 minutes passed between the time Plaintiff was asked to remove the feces from the window until the time the Extraction Team Members went into the cell. *See Burke v. Browns,* 653 F. App'x 683, 696 (11th Cir. 2016) ("Defendants went to great lengths to temper the severity of the force used, and indeed sought to avoid the use of force altogether. Accordingly, no reasonable jury could find that Reese and Brown ordered the use of pepper spray 'maliciously and sadistically to cause harm' to Plaintiff rather than to restore discipline …").

Finally, the threat to the safety of the officers cannot be understated here. Plaintiff was covered in feces, admits to having had a mental breakdown and was completely unrestrained. The use of force reports notes feces had to be cleaned from Plaintiff's hands and arms. ECF Doc. 44-5. Moreover, Captain Settlemires states in the video he was unsure whether Plaintiff may have had a weapon inside the cell. *See Cockrell,* 510 F.3d at 1311 ("guards may use force when necessary to restore order and need not wait until disturbances reach dangerous proportions before responding.").

Under those circumstances, the undersigned finds that the use of the Extraction Team was necessary to limit the officers' exposure to human waste and ensure Plaintiff did not hurt himself or officers as they enter the cell. *See Williams v. Burton,* 943 F.2d 1572, 1576 (11th Cir.1991) ("Williams' history of persistent disobedience and the potential for a disturbance in the segregation unit justified the continued use of the restraints and gag until the officers were reasonably assured that the situation had abated.").

**B.    Use of Force by the Extraction Team**

Plaintiff also takes issue with what the Extraction Team did once inside the cell and as they escorted him to the shower.  As an initial matter, because the Extraction Team Members have not been served, they have not moved for summary judgment.  However, discussion of Plaintiff's allegation as to the Extraction Team is necessary for two reasons.  First, whether the Extraction Team Members used excessive force is relevant to whether Captain Settlemires is liable under the Eighth Amendment for failure to intervene.  Second, whether the Extraction Team Members used force is relevant to Plaintiff's pending motion to amend.

In Plaintiff's amended complaint, he alleges "the officer on my left responsible for cuffing my hands take my left hand behind my back and pull it up behind my head then begin to bend fingers ultimately breaking my hand." ECF Doc. 15 at 6.  Plaintiff states the audio "will have me scream what the officers were

doing."[8]  *Id.*  Plaintiff also contends the officer "responsible for shackling my feet were also bending my toes trying to break them too."[9]  *Id.*  In his response, however, Plaintiff admits that, based on the position of the Extraction Team Members as shown on the video, it is difficult to see the hands of the Extraction Team Members and the Plaintiff from either the fixed-wing or hand-held videos.  ECF Doc. 52 at 5.

The fixed cell video shows the five Extraction Team Members laying on Plaintiff and working to applying restraints on him for a period of about 2 minutes. The undersigned agrees that precisely what the Extraction Team Members are doing while they are trying to restrain Plaintiff cannot be seen on the video because of the positions of the Team Members.  However, while the videos do not blatantly contradict Plaintiff's allegations, the undersigned finds other evidence in the record does.  Namely, the only medical evidence in the record from the post-use-of-force examination shows Plaintiff suffered no significant injury.  ECF Doc. 44-12.  The summary of the examination states, "Upon examination – no redness or bruising on any extremity hand grasps equal, strong, fingers moving [without] difficulty, no swelling noted."  *Id.* at 1.  Plaintiff does not dispute the accuracy of the medical

---

[8] Sgt. Roller and Lt. Murch were the number 2 and 3 Extraction Team Members and were responsible for applying hand restraints on Plaintiff.  *See* HH Video.  Because all Extraction Team Members are wearing hazmat suits, it is not clear whether Roller or Murch was on Plaintiff's left side.
[9] Officer Derouin and Officer Chambers were the number 4 and 5 Extraction Team Members and were responsible for applying leg restraints on Plaintiff.  *See* HH Video.

records.  Moreover, there is no evidence Plaintiff sought any medical attention for his hand or toes or that any doctor diagnosed either as broken.

The Court is entitled to "discount a prisoner's claim of serious injury when it is only a conclusory allegation, unsupported by physical evidence, medical records, or corroborating testimony of witnesses." *Oliver v. Warden*, 761 F. App'x 960, 965 (11th Cir. 2019); *Burke v. Bowns*, 653 F. App'x 683, 697 (11th Cir. 2016) (rejecting Plaintiff's claim of "'severe injury and major contusions to his eye and cheekbone' as well as 'injury to his back'" because he "introduced no 'specific facts,' to refute Defendants' health services report, which states that Plaintiff's only injuries were '[m]ild swelling and redness on the right side of the face' and slight tenderness in the right side of his neck and back.") (internal citations omitted).

Regardless, even accepting as true that an Extraction Team Member bent back Plaintiff's fingers, such conduct is not excessive where it is necessary to force submission to hand restraints. *See Oliver v. Warden*, 761 F. App'x 960, 965 (11th Cir. 2019) (rejecting excessive force claim based on officer bending inmate's fingers back and rammed inmate in the back with a baton during the cell extraction, stating, "We cannot say the complained-of force was out of proportion to the legitimate need for force, particularly given the absence of evidence that Oliver was injured or sought medical treatment as a result.").

Finally, the Court also finds the video evidence blatantly contradicts Plaintiff's claim the Extraction Team Members choked him or dug into his ribs as he was escorted to the decontamination shower. At marker 08:05 in the handheld video, the Extraction Team Members lift Plaintiff off his cell floor and walk him to the shower. The video shows Plaintiff during the entire trip to the shower, until marker 10:42. During the walk, two Extraction Team Members are holding Plaintiff up, each with an arm intertwined in Plaintiff's arm. The Member to the left of Plaintiff had his hand on top of Plaintiff's head. The arm and hand of the Member to the right of Plaintiff can be seen swinging along his side as he walks. The video does not show any Member choking Plaintiff or digging into his ribs.

Also, Plaintiff is not heard complaining about the manner in which he was being transported during the walk. Moreover, there is no indication from the pace at which the men are walking or from Plaintiff's movements that he was being choked or that any Extraction Team Member was digging into Plaintiff's ribs. Notably, Plaintiff does not address these incidents in his response. Thus, the undersigned finds that Plaintiff has presented no evidence from which a reasonable juror could find that any of the Extraction Team Members "maliciously and sadistically" caused harm to him.

## V.    LACK OF A MORE THAN *DE MINIMIS* INJURY

Defendant also argues that even if summary judgment is not granted, that Plaintiff cannot receive compensatory damages because he fails to provide evidence of a more-than-de-minimis injury.  The undersigned agrees.

The Eleventh Circuit recently reiterated that absent a proven physical injury, a prisoner in an excessive force case is not entitled to compensatory damages in a § 1983 action.  *Hoever v. Marks*, No. 17-10792, 2021 WL 1326618, at *3 (11th Cir. Apr. 9, 2021) ("[T]he text of § 1997e(e) bars . . . requests for compensatory damages stemming from purely mental or emotional harms.").  Where the claimed physical injury is merely *de minimis* or, in some circumstances, where there is no physical injury at all, the plaintiff cannot recover compensatory damages.  *Id*.  Although the Eleventh Circuit has not adopted a definition of "*de minimis*," the court has acknowledged an injury is more than *de minimis* if it is "an observable or diagnosable medical condition requiring treatment by a medical care professional." *Thompson v. Sec'y, Fla. Dep't of Corrections*, 551 F. App'x 555, 557 n.3 (11th Cir. 2014).

In Plaintiff's amended complaint, he seeks "compensable relief for pain and suffering; mental and physical damages as well as permanent disfigurement."  ECF Doc. 15 at 7.  The only injury complained of by Plaintiff is a broken hand.  However, as discussed above, Plaintiff has presented no evidence from which a reasonable

juror could infer that Plaintiff had a broken hand. To the contrary, the undisputed medical evidence shows that Plaintiff had no injuries, no swelling, no bruising, and that his hand strength was strong and equal. ECF Doc. 44-12. Because the undersigned finds Plaintiff has failed to establish a more than *de minimis* injury, the undersigned finds Plaintiff is entitled to only nominal damages. Thus, should this case proceed against the individual Extraction Team Members or Settlemires, Plaintiff's damages should be limited to $1.00.

## VI.    CONCLUSION

For the reasons set forth above, the undersigned finds Defendant Settlemires' motion for summary judgment should be GRANTED.[10] Also, because the video and medical evidence show the Extraction Team Members did not use excessive force against Plaintiff, the undersigned finds the motion to amend to identify the Extraction Team Members by name would be futile. Thus, the undersigned also recommends the motion to amend be DENIED.

---

[10] Settlemires also moves for summary judgment on qualified immunity grounds. The undersigned, however, does not find it necessary to separately address that argument given the undersigned's determination that no excessive force was used. *See Piazza v. Jefferson Cty., Ala.*, 923 F.3d 947, 951 (11th Cir. 2019) (official is entitled to qualified immunity if plaintiff fails to establish constitutional violation; in such a case, court need not address other prong -- whether constitutional right asserted was clearly established) (citing *Jacoby v. Baldwin Cty.*, 835 F.3d 1338, 1344 (11th Cir. 2016)).

Accordingly, it is respectfully RECOMMENDED that,

1.      Defendant's Motion for Summary Judgment, ECF Doc. 44, be GRANTED.

2.      The clerk be directed to enter final judgment on all claims in favor of Defendant Settlemires.

3.      Plaintiff's motion for leave to amend (ECF Doc. 41) is DENIED, as futile.

4.      The clerk shall notate on the electronic docket that the filing docketed as "Amended Complaint" (ECF Doc. 42) is a "Proposed Second Amended Complaint."

5.      The Extraction Team Members be terminated as defendants.

6.      The clerk be directed to close the case.

At Pensacola, Florida, this 22nd day of April, 2021.

*/s/ Hope Thai Cannon*
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

<u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u>  An objecting party must serve a copy of its objections upon all other parties.  A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.